**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

---

AMBAC ASSURANCE CORPORATION and
THE SEGREGATED ACCOUNT OF AMBAC
ASSURANCE CORPORATION,

                  Plaintiffs,

          -against-

CAPITAL ONE, N.A., as successor by merger
to CHEVY CHASE, F.S.B.,

                  Defendant.

---

12-cv-7937 (MGC)

---

**DEFENDANT'S REPLY MEMORANDUM OF LAW**
**IN SUPPORT OF ITS MOTION TO DISMISS THE COMPLAINT**

James A. Murphy
Cameron S. Matheson
Murphy & McGonigle, PC
4870 Sadler Road, Suite 301
Glen Allen, Virginia 23060
(804) 762-5320

James K. Goldfarb
Soren E. Packer
Murphy & McGonigle, PC
60 East 42nd Street, Suite 5230
New York, New York 10165
(212) 880-3961

*Attorneys for Defendant Capital One, N.A.*

## <u>TABLE OF CONTENTS</u>

PRELIMINARY STATEMENT ................................................................................................1

ARGUMENT .......................................................................................................................1

   I.   REPURCHASE IS THE SOLE AND EXCLUSIVE REMEDY FOR THE
       BREACHES ALLEGED BY AMBAC ................................................................1

     A.   Ambac's interpretation of the contracts fails. ................................................2

     B.   Ambac mischaracterizes Capital One's correspondence. ................................2

     C.   Ambac's stray assertions prove nothing....................................................3

     D.   Ambac's interpretation is contradicted by case law........................................5

   II.   AMBAC'S CLAIMS ARE DEFECTIVE AS A MATTER OF LAW AND
       SHOULD BE DISMISSED. ................................................................................6

     A.   Ambac cannot seek repurchase of loans for which it has not provided
         notice of breach. ..............................................................................6

     B.   Ambac cannot sue for "breach" of the repurchase remedy................................8

     C.   Ambac cannot seek rescission based on a material breach theory.....................9

     D.   Ambac has no indemnity claim here. ....................................................10

     E.   Ambac's reimbursement claims are barred. .............................................12

CONCLUSION....................................................................................................................13

## TABLE OF AUTHORITIES

**Cases**

*Abele Tractor & Equip. Co., Inc. v. Varity Corp.*,
  977 F. Supp. 1252 (N.D.N.Y. 1997) ................................................................... 10

*Am. Auto. Ins. Co. v. Rest Assured Alarm Sys., Inc.*,
  786 F. Supp. 2d 798 (S.D.N.Y. 2011) .................................................................. 7

*Assured Guar. Mun. Corp. v. DLJ Mortg. Capital, Inc.*,
  2012 N.Y. Slip Op. 52001(U) (Oct. 11, 2012) .................................................... 10

*Assured Guar. Mun. Corp. v. Flagstar Bank, FSB*,
  No. 11-cv-2375 (JSR), 2013 WL 440114 (S.D.N.Y. Feb. 5, 2013) ...................... 6, 7

*Assured Guar. Mun. Corp. v. Flagstar Bank, FSB*,
  No. 11-cv-2375, 2011 WL 5335566 (S.D.N.Y. Oct. 31, 2011) ........................... 5, 11

*Central Mort. Co. v. Morgan Stanley Mortg. Capital Holdings LLC*,
  No. 5140-CS, 2012 WL 3201139 (Del. Ch. Aug. 7, 2012) .................................. 6, 7

*Hahn Auto. Warehouse, Inc. v. Am. Zurich Ins. Co.*,
  18 N.Y.3d 765 (2012) ........................................................................................... 9

*LaSalle Bank Nat'l Ass'n v. Lehman Bros. Holdings*,
  237 F. Supp. 2d 618 (D. Md. 2002) ..................................................................... 8

*Lehman Bros. Holdings Inc. v. Nat'l Bank of Ark.*,
  875 F. Supp. 2d 911 (E.D. Ark. 2012) ................................................................. 8

*MASTR Asset Backed Secs. Trust 2006-HE3, by U.S. Bank Nat'l Ass'n v.
  WMC Mortg. Corp.*,
  843 F. Supp. 2d 996 (D. Minn. 2012). ........................................................... 5, 6, 7

*MBIA Ins. Corp. v. Countrywide Home Loans Inc.*,
  936 N.Y.S.2d 513 (2012) ...................................................................................... 10

*Owusu v. New York State Ins.*,
  655 F. Supp. 2d 308 (S.D.N.Y. 2009) .................................................................. 2

*Resolution Trust Corp. v. Key Fin. Servs., Inc.*,
  280 F.3d 12 (1st Cir. 2002) ............................................................................... 8, 9

*In re Shulsky's Estate*,
  120 Misc. 232 (Sur. 1923) .................................................................................... 4

*Structured Mortg. Trust 1997-2 v. Daiwa Fin. Corp.*,
  No. 02-cv-3232, 2003 WL 548868 (S.D.N.Y. Feb. 25, 2003) ............................. 9

*Syncora Guarantee Inc. v. Countrywide Home Loans, Inc.*,
  935 N.Y.S.2d 858 (2012) ...................................................................................... 10

*Syncora Guarantee Inc. v. EMC Mortg. Corp.*,
  874 F. Supp. 2d 328 (S.D.N.Y. 2012) .................................................................. 11

**Other Authorities**

*Black's Law Dictionary* 507 (6th ed. 1990) ..................................................................................... 4

## PRELIMINARY STATEMENT

Capital One has moved to dismiss Ambac's Complaint to the extent it seeks a remedy other than repurchase with respect to alleged defects in 1,286 mortgage loans collateralizing a securitization trust ("the Motion").  Those 1,286 loans are the only loans for which Ambac has given the contractually required notice of defects to Capital One.

Ambac does not dispute that every loan defect of which it complains is specifically covered by a warranty found in § 2.04(a) of the PSA and §§ 2.01(l), 2.02(k) of the I&I ("the Warranties").  Ambac concedes that repurchase constitutes the exclusive remedy for a breach of the Warranties.  Ambac's Complaint seeks to "end run" that exclusive remedy, however, by postulating that the parties provided separate warranties in the I&I that were entirely redundant of the Warranties but provided Ambac with broader remedies.

Ambac's interpretation not only lacks any factual or textual support, it guts the exclusive remedy of any meaning.  The parties agreed: (1) repurchase constituted the exclusive remedy for breaches of the Warranties; and (2) the repurchase remedy would be triggered by giving Capital One notice of the alleged defect and an opportunity to cure it.  This clear contractual expression of intent prohibits Ambac from suing Capital One on any loan for which notice of defect was not given and for any remedy other than repurchase.  The Motion should be granted.

## ARGUMENT

### I.  REPURCHASE IS THE SOLE AND EXCLUSIVE REMEDY FOR THE BREACHES ALLEGED BY AMBAC

In order to "end run" the exclusive remedy, Ambac labels the warranties in the PSA as "Loan-Level" and the warranties in the I&I as "Transaction-Level" and argues that these labels lead to substantive distinctions.

A.      *Ambac's interpretation of the contracts fails.*

Ambac argues that the exclusive remedy provisions of §§ 2.01(l) and 2.02(k) of the I&I apply only to the warranties found in the PSA because they do not refer "to breaches of warranties made in the I&I." Opp. at 10. This argument ignores the effect of an incorporation, which makes the terms of the incorporated document part of the terms of the incorporating document. *Owusu v. New York State Ins.*, 655 F. Supp. 2d 308, 323 n.16 (S.D.N.Y. 2009) (granting summary judgment to defendants; "Under New York State law, documents extrinsic to a contract are incorporated as terms of the contract when they are specifically referenced in the contract."). Because of the I&I's incorporation of the PSA warranties, the I&I's exclusive remedy provision necessarily "refer[s] to breaches of warranties made in the I&I Agreements."

Based on § 5.02 of the I&I, Ambac claims that it is entitled to "broader" remedies than repurchase. Compl. ¶¶ 35, 40-42; *see* Opp. at 14. But that section actually precludes the alternative remedies Ambac seeks:

> (b) Unless otherwise expressly provided, no remedy herein conferred or reserved is intended to be exclusive of any other remedy, but each remedy shall be cumulative and shall be in addition to other remedies given under this Insurance Agreement, the Pooling and Servicing Agreement or existing at law or in equity.

I&I, § 5.02(b) (emphasis added). By virtue of § 5.02(b), the general rights granted to Ambac under § 5.02(a) exist only when a remedy is not stipulated to be exclusive.

B.      *Ambac mischaracterizes Capital One's correspondence.*

Ambac repeatedly contends that Capital One has conceded that repurchase is not the exclusive remedy where "such a large number of loans" is concerned. Opp. at 2; *see also id.* at 5, 19, 27. Capital One supposedly made this concession in an October 22, 2010 letter responding to a demand to repurchase 563 loans and in an August 23, 2011 letter responding to

a demand to repurchase 244 loans.  *Id.* at 2, 5, 19.  Neither letter supports Ambac's contention. Ex. D & E to Supplemental Matheson Decl.

In fact, as those letters make abundantly clear, Capital One protested that Ambac's bulk delivery of repurchase demands violated the contracts' requirement of prompt notice of non-conforming loans and could "not trigger an obligation to cure or repurchase within 60 days." Ex. E at 2; *see* Ex. D at 1.  Capital One further noted that, as Ambac well knew, the bulk delivery of repurchase demands could not possibly be responded to within the 60-day period provided for in the contracts.  Ex. D at 1; Ex. E at 2.  Capital One has always acted consistently with the position that repurchase constitutes the sole remedy available to Ambac.  Ambac makes no serious argument that Capital One waived its rights under the PSA or the I&I.  In fact, the letters say precisely the opposite:  "Capital One reserves all of its rights and remedies and nothing contained in this letter shall constitute a waiver of any of Capital One's rights or remedies under the parties' agreements, at law or in equity."  Ex. D at 3-4; Ex. E at 4.

Ironically, the repurchase correspondence actually undermines Ambac's position.  By having demanded repurchase of the loans on the basis of PSA § 2.04, Ambac demonstrates that the alleged loan defects at issue are covered by the Warranties.  Under the express terms of both the PSA and the I&I, the exclusive remedy for those alleged breaches is repurchase.

C.    *Ambac's stray assertions prove nothing.*

Ambac cannot and does not cite any provision or factual recitation in the contracts expressly evidencing the parties' intention to create redundant warranties with different remedies.  Instead, Ambac weaves into its argument a host of stray, unsupported assertions in support of its theory.  Those assertions prove nothing.

3

For example, Ambac asserts that the so-called "Transaction-Level" warranties were made "only" to Ambac as part of a "separately negotiated" contract and as a "condition precedent." Opp. at 6, 8-9, 12-13 (citing I&I, § 3.01(e)).  That condition precedent expressly required the incorporation of the so-called "Loan-Level" warranties and exclusive remedies into the I&I.  The PSA and the I&I cannot operate on different "levels"; they both contain the same warranties.

Ambac likewise asserts that the so-called "Transaction-Level" warranties concerned Capital One's "business practices" rather than the quality of the loans.  *Id.* at 2, 6.  Ambac's five causes of action, however, are expressly based upon breaches of warranties regarding the loans,[1] not "business practices."

Ambac also asserts that PSA warranties apply to each loan individually whereas the I&I warranties apply to them as a whole.  *Id.* at 4.  A warranty regarding "each" loan is no different from a warranty regarding "all" loans.  Either warranty can be breached with respect to a single loan or one thousand loans.  Indeed, as a semantic matter, "each" and "all" are regarded as synonymous.  *In re Shulsky's Estate*, 120 Misc. 232, 236 (Sur. 1923) ("It was to carry out this intent that the testator used the word 'all,' which is frequently used in the sense of 'each' or 'every one of.'"); *Black's Law Dict.* 507 (6th ed. 1990) ("'Each' is synonymous with 'all.'").

Finally, Ambac asserts that if Capital One is correct, then the I&I was superfluous and no purpose was served by entering it.  Opp. 2, 8-9, 18-19.  The PSA does not obligate Ambac to

---

[1] Ambac's First Cause of Action is expressly based upon alleged breaches of "Loan-Level Warranties"; its Second Cause of Action is based upon Capital One's "refusing to cure or repurchase any of the mortgage loans that breached Capital One's Loan-Level Warranties"; its Third Cause of Action for Material Breach of the I&I Agreement is based upon  Capital One's "extensive representations and warranties *concerning the loans* in the Transactions [the so-called "Transaction-Level Warranties] and . . . agreeing to broad remedies for breaches of those representations and warranties" (emphasis added); its Fourth Cause of Action seeks indemnification for its losses sustained as a result of the "pervasive breaches of Capital One's Transaction-Level Warranties"; and its Fifth Cause of Action seeks reimbursement for payments made under the financial guaranty policies "as a result of Capital One's failure to repurchase any loan."  The only "business practices" of Capital One at issue here concern the origination of the loans.  *See* Compl. ¶ 38.  No matter how Ambac tries to "spin" things, this case manifestly boils down to the quality of the loans.  All of the loan defects of which Ambac complains are covered by the Warranties and subject to an exclusive remedy for breach—repurchase.

issue insurance, but the I&I does.  A purpose for entering the I&I plainly exists regardless of the correctness of Capital One's interpretation.  That purpose does not inherently require redundant warranties with different remedies for breach.  Indeed, it is Ambac's interpretation that renders the exclusive remedy provision utterly superfluous.[2]

       D.    *Ambac's interpretation is contradicted by case law.*

In its opening brief, Capital One demonstrated through case law that Ambac's reading of the contracts violates fundamental rules of contract construction.  Mem. at 13, 17-18.  Capital One cited cases specifically interpreting contracts that are analytically identical to the PSA and I&I here and finding that repurchase was the insurer's exclusive remedy.  *Id.* at 12-13 (citing *Assured Guar. Mun. Corp. v. Flagstar Bank, FSB*, No. 11-cv-2375, 2011 WL 5335566, at *4-5 (S.D.N.Y. Oct. 31, 2011) ("*Flagstar I*"); *MASTR Asset Backed Secs. Trust 2006-HE3, by U.S. Bank Nat'l Ass'n v. WMC Mortg. Corp.*, 843 F. Supp. 2d 996, 1001 (D. Minn. 2012)).

Ambac does not respond to Capital One's contract construction-based arguments and, unable to cite any cases supporting its reading of the I&I, weakly attempts to distinguish *Flagstar I* and *MASTR*.  Their distinctions miss the mark.

Ambac attempts to distinguish *Flagstar I* on the ground that the Court did not address a claim for rescission based on "material breaches of transaction-level warranties."  Opp. at 10, 15.  Ambac's distinction is misleading because the insurer in *Flagstar I* argued that, under the I&I, it was entitled to all "other remedies . . . existing at law or in equity."  2011 WL 5335566, at *4.  The *Flagstar I* Court specifically held that the designation of the repurchase remedy as exclusive

---

[2] Ambac tries to dodge this issue by suggesting that the I&I redundantly warranted on a "Transaction-Level" precisely the same matters covered by the Warranties but provided broader remedies if some indeterminately large number of loans breached the Warranties.  Opp. at 11-12.  Ambac then asserts that "[i]t is not necessary to determine the precise dividing line between these two types of warranties."  *Id.* at 12.  To the contrary, that dividing line is crucial to Ambac's theory of the case.  If these sophisticated parties actually intended that different levels of warranties exist, there should be no doubt that they would have defined that dividing line.  The fact that they did not do so is a damning rebuttal of Ambac's theory.

precluded any other remedy at law or equity. *Id.* at *5. As demonstrated above, § 5.02(b) of the I&I has the same effect here, precluding an equitable recissionary remedy (Opp. at 10) for any of the breaches alleged by Ambac.[3]

Ambac distinguishes *MASTR* on the ground that the plaintiff in that case was a trustee rather than an insurer and sued "under a purchase agreement, not an I&I Agreement providing additional and independent rights and remedies." *Id.* at 15-16. Again, Ambac's distinction is misleading. The salient point ignored by Ambac is that the court denied the broader remedies sought by the trustee in *MASTR* precisely because the "the sole remedy available to U.S. Bank is to seek cure, repurchase or substitution of the allegedly defective WMC mortgages." 843 F. Supp. 2d at 1001. That reasoning applies equally here.

## II.   AMBAC'S CLAIMS ARE DEFECTIVE AS A MATTER OF LAW AND SHOULD BE DISMISSED.

### A.   *Ambac cannot seek repurchase of loans for which it has not provided notice of breach.*

In its opening brief, Capital One showed that Ambac's first cause of action for repurchase must be limited to only those loans for which Ambac has given notice of breach to Capital One. Mem. at 18-21 (citing *MASTR*, 843 F. Supp. 2d at 1000; *Central Mortg. Co. v. Morgan Stanley Mortg. Capital Holdings LLC*, No. 5140-CS, 2012 WL 3201139, at *2-3 (Del. Ch. Aug. 7, 2012)). Ambac does not discuss these cases but instead relies upon *Flagstar II*. Opp. at 22-23.

In *MASTR*, a trustee sued two originators seeking to force the repurchase of all allegedly non-conforming loans, even those for which no notice of breach had been given to the originators. The repurchase provisions at issue in *MASTR* were analytically identical to the one here. *Compare MASTR*, No. 11-cv-02452 (D. Minn.), ECF Nos. 28-1 at 40, 26-1 at 43 (cited and

---

[3] In the recent follow-up decision to *Flagstar I*, Judge Rakoff awarded relief within the context of his prior ruling that repurchase constituted the insurer's exclusive remedy. *Assured Guar. Mun. Corp. v. Flagstar Bank, FSB*, No. 11-cv-2375 (JSR), 2013 WL 440114, at *37 (S.D.N.Y. Feb. 5, 2013) ("*Flagstar II*").

described at 843 F. Supp. 2d at 1000) *with* PSA § 2.04(b) (quoted at Mem. at 19).  The court recognized that under the terms of the contracts, the trustee's "causes of action" for repurchase "arise only" when it has demanded cure or repurchase and the originator has failed to comply within the specified time period.  843 F. Supp. 2d at 1000.  Since the trustee "never demanded that [the originators] cure any defective loans other than the loans in the first sample . . . . [Its] claims arising out of other loans, for which it has yet to give [the originators] notice and an opportunity to cure, are not yet ripe. Those claims must be dismissed." *Id.*  The court in *Central Mortgage* likewise enforced a contractually-specified "notice and cure regime."  2012 WL 3201139, at *2-3.

   *Flagstar II*, however, focused on whether notice as to some allegedly defective loans was sufficient to trigger the obligation to repurchase all defective loans.  2013 WL 440114, at *36-37.  The Court's finding that such notice was sufficient left unanswered a question of major practical significance—what specific loans were to be repurchased?  The Court's finding presupposed that the originator would know which loans to repurchase, *i.e.*, which loans breached a warranty.  This supposition is not warranted here.  The Complaint acknowledges that 318 of the 2,399 loans Ambac reviewed did not breach any warranties at all.  Compl. ¶ 7.  Without the requisite notice, Capital One cannot determine which specific loans, if any, are to be repurchased.

   Accordingly, the decisions in *MASTR* and *Central Mortgage* not only represent the majority rule, they best effectuate the parties' unambiguous contractually expressed intention and provide the only realistic way to enforce the repurchase remedy.  *See Am. Auto. Ins. Co. v. Rest Assured Alarm Sys., Inc.*, 786 F. Supp. 2d 798, 804 (S.D.N.Y. 2011) (granting 12(b)(6) motion to dismiss; "'If the contract is unambiguous . . . the court must give effect to the contract as written.'" (citation omitted)).  The rule they set forth should be applied here.

B.     *Ambac cannot sue for "breach" of the repurchase remedy.*

Repurchase is a remedy for a breach, not an obligation that can be separately breached. Mem. at 21-22.  Ambac contends, however, that §§ 5.01(d) and 5.02(a) of the I&I respectively make the failure to repurchase an event of default and, hence, a breach entitling Ambac to "other breach-of-contract remedies (*e.g.*, money damages)."  Opp. at 21.  To the extent these provisions create a right to sue for "breach of a remedy"—which Capital One disputes—Ambac's contract interpretation fails once again.

Section 5.01(d) lists certain events that constitute an "Event of Default."  One such event is the failure to "observe or perform" any "covenants or agreements on the part of [Capital One]." I&I, § 5.01(d).   Section 5.01(d) permits Ambac to take whatever steps it deems "necessary or desirable . . . to collect amounts . . . then due . . . or to enforce the performance or observance of any obligation, agreement or covenant of [Capital One]."  In other words, Ambac can sue to enforce the repurchase of the loans, as Capital One contends.  Section 5.02(a) does not, however, entitle Ambac to rescissory damages, rescission, more "global relief," or to otherwise avoid the repurchase remedy.

Ambac also responds that "under New York law" a failure to repurchase constitutes a separate breach.  Opp. at 21 (citing *LaSalle Bank Nat'l Ass'n v. Lehman Bros. Holdings, Inc.*, 237 F. Supp. 2d 618, 638 (D. Md. 2002), *Lehman Bros. Holding, Inc. v. Nat'l Bank of Ark.*, 875 F. Supp. 2d 911, 916-7 (E.D. Ark. 2012), and *Resolution Trust Corp. v. Key Fin. Servs., Inc.*, 280 F.3d 12, 16 (1st Cir. 2002)).  In fact, none of these cases actually applies or interprets any New York case law on this point.  Furthermore, the seminal case relied upon by *LaSalle Bank* and *Lehman Bros. Holdings*, and *Resolution Trust*, did not actually rule that a failure to repurchase

constitutes a separate breach.[4]  More importantly, as just shown, the terms of the I&I make these cases irrelevant.  Even if a remedy could be "breached," Ambac's only recourse for such a "breach" is to sue to enforce that remedy.

Assuming that these cases could be relevant, they misstate New York law.  New York's Court of Appeals has ruled that, for purposes of the Statute of Limitations, a cause of action for a payment of a sum of money allegedly owed pursuant to a contract accrues when the party making the claim possesses a legal right to demand payment rather than when the defendant refuses the demand.  *Hahn Auto. Warehouse, Inc. v. Am. Zurich Ins. Co.*, 18 N.Y.3d 765, 770 (2012) (affirming dismissal of insurer's claim for payment as time-barred).  This rule could not exist if the refusal to make a payment constituted a separate breach.

Furthermore, this principle fully applies to the repurchase remedy at issue here. *Structured Mortg. Trust 1997-2 v. Daiwa Fin. Corp.*, No. 02-cv-3232, 2003 WL 548868, at *3 (S.D.N.Y. Feb. 25, 2003) (applying New York law; failure of depositor to repurchase a securitized mortgage loan under the terms of a Pooling and Servicing Agreement did not constitute a separate accrual date for suit based on alleged breaches of representations and warranties concerning the quality of the loan).  Ambac has no cause of action for the "breach" of a remedy.

C.    *Ambac cannot seek rescission based on a material breach theory.*

Ambac's claim to a right of equitable rescission based on the theory of "material breach" of the I&I fails.  Compl. "Third Cause of Action"; Opp. at 10.  The I&I expressly precludes the rescission that Ambac seeks.  Sections 2.01(l) and 2.02(k) of the I&I both designate repurchase as the exclusive remedy for breaches of the Warranties.  Accordingly, § 5.02(b) of the I&I

---

[4] The court in *Resolution Trust Corp.* merely affirmed the trial court's decision "whether or not" the failure to repurchase constituted an independent breach.  280 F.3d at 18.

precludes recourse to any other remedy "existing at law or in equity" for those breaches, no matter how Ambac labels its theory of breach.  This same analysis precludes Ambac's claim for rescissionary (rescissory) damages.  Opp. at 24-27.  *E.g.*, *Abele Tractor & Equip. Co., Inc. v. Varity Corp.*, 977 F. Supp. 1252, 1254 (N.D.N.Y. 1997) (granting summary judgment dismissing the complaint; "Since the Agreement expressly limits recovery for defective parts to repair or replacement and excludes consequential and commercial losses of any type, rescission of the contract would permit recovery above that for which the contract provides.") (footnote omitted).

Rescissionary damages are also precluded on a separate ground.  As Capital One has shown, an insurer's acceptance of premiums precludes it from seeking rescissionary relief.  Mem. at 23-24 (citing *Assured Guar. Mun. Corp. v. DLJ Mortg. Capital, Inc*., 2012 N.Y. Slip Op. 52001(U), at *6-7 (Oct. 11, 2012) ("*DLJ*")).  Ambac continues to accept premiums on the insurance policies (*id.* at 24) and conspicuously fails to deny that it does.  Instead, Ambac criticizes the result in *DLJ* on the ground that, in two other cases, Justice Bransten permitted insurers' claims for rescissionary damages to proceed.  *Syncora Guarantee Inc. v. Countrywide Home Loans, Inc.*, 935 N.Y.S.2d 858, 870 (2012); *MBIA Ins. Corp. v. Countrywide Home Loans, Inc.,* 936 N.Y.S.2d 513 (2012); Opp. at 24-25.  Those cases do not, however, reflect that they involved insurers like Ambac who continued to accept premiums.  *DLJ* is the only apposite authority presented for this Court's consideration.

D.    *Ambac has no indemnity claim here.*

Ambac rests its claim for indemnity on I&I, § 3.04(a).  Compl. ¶ 74.  Section 3.04(a)(iv), however, expressly excludes the type of loan defects alleged by Ambac from the scope of the alleged indemnification obligation.  Mem. at 26-27.  Ambac admits that it cannot obtain indemnity for breaches of the Warranties (Opp. at 16), but seeks to salvage its claim by asserting

10

that it seeks indemnification for the breaches of so-called "Transaction-Level" warranties. As the Complaint and Ambac's repurchase demands demonstrate, every loan defect of which Ambac complains is covered by the Warranties. Indemnity is precluded here.

Capital One has also shown that indemnity is precluded because indemnity clauses presumptively do not apply to interparty claims but only to claims asserted by third parties against the indemnified party. Mem. at 28-29 (citing *Flagstar I*). Ambac responds that the claims by its own insureds under their policies constitute the types of third-party claims for which indemnity can be recovered. Opp. at 23. Ambac's own argument demonstrates that this cannot be true.

Ambac acknowledges that indemnity is available only "when there are claims ***against*** Ambac by third parties based on certain misconduct by Capital One." *Id.* at 16 (emphasis in original). The insured investors' claims under the policy are based on the fact that the investors have not been paid; they are most assuredly not based on misconduct by Capital One. Only Ambac in this interparty suit alleges and sues upon misconduct by Capital One.

Furthermore, Ambac's contention was necessarily rejected in *Flagstar I*. 2011 WL 5335566, at \*5 (finding that the right to indemnity arose only in connection with third-party *lawsuits*). Ambac seeks to distinguish *Flagstar I* based on an inference drawn from another case, *Syncora Guarantee Inc. v. EMC Mortgage Corp.*, 874 F. Supp. 2d 328, 332, 340-41 (S.D.N.Y. 2012). Opp. at 23-24. *Syncora* is completely inapposite here.

In *Syncora*, Judge Crotty denied equitable relief on the ground that the insurer had failed to demonstrate the inadequacy of its remedies at law, including indemnity. Thus, the court did not "find" (Opp. at 23-24), expressly or by implication, that the indemnity clause could have

been invoked by the insurer in an action at law.  It simply held that the insurer had failed to show that it could not do so.  Ambac has no claim for indemnity.

        E.       *Ambac's reimbursement claims are barred.*

Capital One has shown that Ambac has no claim for "reimbursement."  Mem. at 29.  The compensation Ambac seeks in reimbursement for Capital One's alleged failure to repurchase loans will necessarily be supplied if it succeeds in forcing the repurchase of any loans.  If it cannot force repurchase, Ambac has no claim for reimbursement regarding the quality of the loans.  Ambac's response that § 3.03(b) of the I&I entitles it to reimbursement of payments on loans that should have been repurchased (Opp. at 17) proves that Capital One's argument is correct—repurchase is the sole measure of Ambac's remedy.

## <u>CONCLUSION</u>

For the foregoing reasons, Capital One respectfully requests that the Complaint be dismissed with prejudice to the extent that: (1) it seeks any remedy other than repurchase; and (2) it seeks any remedy at all for any loan other than the 1,286 loans for which Capital One has been given notice of defects.


Dated: March 5, 2013                    Respectfully submitted,

<u>/s/ Cameron S. Matheson</u>
Cameron S. Matheson

James A. Murphy
Murphy & McGonigle, PC
4870 Sadler Road, Suite 301
Glen Allen, Virginia 23060
(804) 762-5320

James K. Goldfarb
Soren E. Packer
Murphy & McGonigle, PC
60 East 42nd Street, Suite 5230
New York, New York 10165
(212) 880-3961

*Attorneys for Defendant Capital One, N.A.*