# EXHIBIT

# D



Capital One, N.A.
Attn: 19050-0750
1680 Capital One Drive
McLean, VA 22102

October 22, 2010

**Via Federal Express**

U.S. Bank National Association, as Trustee
EP MN WS3D
60 Livingston Avenue
St. Paul, Minnestoa 55107

Ambac Assurance Corporation
One State Street Plaza
New York, New York 10004
Attention: Consumer Asset-Backed Securities Group
Policy No. AB1065BE

Jean Kim, Esq.
Ambac Assurance Corporation
Legal Department
One State Street Plaza
New York, New York 10004

    Re:    Chevy Chase Funding LLC
             Mortgage-Backed Certificates, Series 2007-1 and 2007-2

Ladies and Gentlemen:

    I am writing in response to U.S. Bank's two letters dated September 7, 2010, requesting that Capital One, N.A. ("Capital One"), successor by merger to Chevy Chase Bank, F.S.B. ("Chevy Chase Bank") cure or repurchase 563 mortgage loans based upon alleged breaches of representations and warranties made by Chevy Chase Bank with respect to those loans.

    Section 2.04(b) of the Pooling and Servicing Agreements, dated March 1, 2007 and June 1, 2007 (the "PSAs"), provides Chevy Chase Bank just 60 days from receipt of your letters to evaluate repurchase demands and then cure or repurchase loans if a valid claim is made. But as you must be aware based upon your own review of these loans, 60 days is insufficient to address 563 mortgage loans. Section 2.04(b) was intended to address situations in which alleged breaches of representations and warranties, if any, were brought to the attention of the Chevy Chase Bank promptly and in small numbers. Capital One is diligently analyzing the identified loans to determine whether the claims of alleged breaches are valid and whether those alleged breaches materially and adversely affected the interests of the Insurer, but a review and response for 563 mortgage loans within 60 days is simply unrealistic.

    Capital One's review of your repurchase demands has been further hampered because you have provided insufficient information to enable Capital One to determine whether the claims of alleged breaches are valid and whether those alleged breaches materially and adversely affected the interests of the Insurer. For example, Capital One transferred servicing

on all of the loans at issue on February 26, 2010, and thus, does not have payment history information for the loans past that date. Many of these loans were current as of the time servicing transferred. If, by your repurchase demands you are indicating that any these loans went into default sometime after February 26, 2010, we will need to receive the servicing records for those loans to evaluate your claims. Additionally, your demand did not include any supporting documentation referenced in the loan level allegations. Capital One requests that this information be provided as well. Moreover, you have not provided sufficient information to demonstrate that any of the alleged breaches materially and adversely affected the interests of the Insurer.

In addition, based upon Capital One's preliminary analysis, many of the alleged breaches of representations and warranties appear unfounded. Our review reveals loans that were properly underwritten and appear to be performing. The following are but a few examples.

<u>Loan # 557021755</u>

U.S. Bank demands the repurchase of loan # 557021755 because the borrower allegedly received $3,064.76 cash back at settlement, but the underwriting guidelines for the loan at issue limited the borrower to $2,000 cash back at settlement. The $3,064.76, however, included reimbursement of the $250 appraisal fee, reimbursement of the $800 tax abatement fee, and a $221 interest credit. These funds are not actually cash back to the borrower. The actual cash back to the borrower was $1,793.76 and, thus, the guidelines were not violated.

Moreover, this loan was funded on April 3, 2007 and the records available to us indicate that payments on this loan were <u>current through at least February 26, 2010</u>. We are, thus, left puzzled by your contention that the amount of cash back received by the borrower in April 2007 on a $468,000 loan somehow constitutes a breach that materially and adversely affected the interests of the Insurer.

<u>Loan # 577004781</u>

U.S. Bank also demands the repurchase of loan # 577004781 because the data tape reflects the note interest rate as 8.38%, but the note reflects the interest rate as 8.0%. As you can see from the loan file, the loan has an adjustable interest rate. The promissory note was signed on May 12, 2006, and the initial interest rate was set at 8.0%. Under the terms of the note, the rate could begin adjusting on June 1, 2006. Thus, the interest rate of the loan properly adjusted before the bid tape was prepared for the 2007 securitization transaction. There is no breach. The records available to us also indicate that payments on this loan were current through at least February 26, 2010. Thus, we do not understand your contention that the difference between the interest rate on the note and the interest rate on the data tape constitutes a breach that materially and adversely affected the interests of the Insurer.

<u>Loan # 556121606</u>

U.S. Bank demands the repurchase of loan # 556121606 because the loan application was not signed by the borrower on the date the loan closed. The borrower signed the loan application on December 19, 2006. The loan closed 41 days later, on January 29, 2007. The underwriting guidelines require that the borrower sign the loan application. That requirement

was satisfied. Neither the guidelines nor applicable regulations require that the borrower sign the loan application on the date the loan closes. Furthermore, the records available to us indicate that payments on this loan were current through at least February 26, 2010. Given that the borrower has made at least 37 payments on the subject loan demonstrating his ability and willingness to repay his financial obligations, it is not clear to us how this alleged breach could have materially affected the interests of the Insurer.

### Loan # 557001047

U.S. Bank demands the repurchase of loan # 557001047 because the loan application obtained subordinate financing from a non-CCB source on a CCB loan that was $688,000, which US Bank claims exceeded underwriting guidelines. Per the applicable underwriting guidelines, on an owner occupied property, if the second trust lender is from a non-CCB Source and the CLTV is 90%, then the first trust loan limit is $750,000. The CLTV on the subject property is 89.07% and our subject loan amount is $688,000 which is within the applicable underwriting Guidelines.

### Loan # 557005006

U.S. Bank demands the repurchase of loan # 557005006 because the loan file is missing a HUD-1 and each loan is required to comply in all material respects with and all regulatory requirements. The final HUD-1 was in the loan file. Another copy is attached. Given that the borrower has made at least 35 payments on the subject loan demonstrating his ability and willingness to repay his financial obligations, it is not clear to us how this alleged breach even if accurate, could have materially affected the interests of the Insurer.

### Loan # 557024213

U.S. Bank demands the repurchase of loan # 557024213 because the final loan application was not signed by the interviewer. The borrowers signed the loan applications on March 9, 2007 and April 4, 2007. The loan file also contains an application dated February 23, 2007 signed by the interviewer. The underwriting guidelines require that the borrower sign the loan application. That requirement was satisfied. Neither the guidelines nor applicable regulations require that the interviewer sign the final loan application. Furthermore, the records available to us indicate that payments on this loan were current through February 26, 2010. Given that the borrower has made at least 33 payments with an impeccable repayment history on the subject loan demonstrating his ability and willingness to repay his financial obligations, it is not clear to us how this alleged breach could have materially affected the interests of the Insurer.

As noted above, the foregoing is merely a sample of our findings relative to the massive repurchase claims you have submitted. We do not believe that the PSAs and, in particular, their notice and repurchase provisions were designed to be a mechanism to force the Seller to go to great expense to evaluate patently frivolous claims of breaches of representations and warranties. We would like to meet with you to discuss in good faith your repurchase demands. Please contact me at your earliest convenience so that we can schedule such a meeting.

Capital One reserves all of its rights and remedies and nothing contained in this letter shall constitute a waiver of any of Capital One's rights or remedies under the parties'

agreements, at law or in equity. Moreover, this letter shall not be construed as a waiver of any defaults under the parties' agreements. This letter is also without prejudice to any position that Capital One may take subsequently on the subject matter.

Very truly yours,

Susanna B. Kondracki
Senior Vice President
Capital One, N.A.