# EXHIBIT

# E



Capital One, N.A.
15000 Capital One Drive
Richmond, VA 23238

Stephen D. Otero
Vice President
Senior Associate General Counsel
Office : 804-284-2978
Fax : 804-284-6361
steve.otero@capitalone.com

August 23, 2011

<u>**Via Electronic and U.S. Mail**</u>

Rachel A. Gupta, Esq.
First Vice President and Assistant General Counsel
Ambac Assurance Corporation
One State Street Plaza
New York, New York 10004

      Re:    Chevy Chase Funding LLC
                  Mortgage-Backed Certificates, Series 2006-1, -2, -3, and-4

Dear Rachel,

      I am writing in response to your four letters dated June 24, 2011 pertaining to the above-referenced transactions, requesting that Capital One, N.A. ("Capital One"), successor by merger to Chevy Chase Bank, F.S.B. ("Chevy Chase Bank") cure or repurchase 244 mortgage loans based upon alleged breaches of representations and warranties made by Chevy Chase Bank with respect to those loans.

      Capital One does not agree with Ambac's assertions of breaches of the Pooling and Servicing Agreements ("PSAs") pertaining to the Transactions.[1] The repurchase provisions in the PSAs are not triggered absent evidence of breaches of representations and warranties that materially and adversely affect Ambac's interests in the loans at issue. Ambac has not provided sufficient information (such as documentation supporting loan level allegations, up-to-date servicing records and payment status) to permit Capital One to determine whether the claimed breaches were valid, and whether such breaches materially and adversely affected Ambac's interests in the individual loans at issue. Because Ambac did not provide the information necessary to

---

[1] Capital One reserves all rights regarding the threshold question of Ambac's standing to demand repurchase.

support well-founded repurchase demands, Ambac's letters did not trigger section 2.04(b) of the PSAs.

Ambac's bulk demand to repurchase 244 loans also does not comply with section 2.04(b) of the PSAs so as to trigger an obligation to cure or repurchase within 60 days. Section 2.04(b) requires Ambac to provide "prompt written notice" of alleged breaches of representations and warranties that materially and adversely affected Ambac's interests with respect to any individual "Mortgage Loan" upon discovery of such breaches. Section 2.04(b) does not contemplate a bulk demand to repurchase 244 loans all at once and without supporting documentation, particularly where the repurchase demand is first asserted several years after the majority of the loans funded and without regard to whether the loans were performing. Such a bulk demand violates both the letter and the purpose of section 2.04(b).

Capital One is diligently analyzing the identified loans to determine whether the claims of alleged breaches are valid and whether those alleged breaches materially and adversely affected the interests of the Insurer, but a review and response for 244 mortgage loans within 60 days is simply unrealistic, even if section 2.04(b) had been triggered.

Capital One's review of your repurchase demands has been hampered because you have provided insufficient information to enable Capital One to determine whether the claims of alleged breaches are valid and whether those alleged breaches materially and adversely affected the interests of the Insurer. For example, Capital One transferred servicing on all of the loans at issue on February 26, 2010, and thus, does not have payment history information for the loans past that date. Many of these loans were current as of the time servicing transferred. If, by your repurchase demands you are indicating that any these loans went into default sometime after February 26, 2010, we will need to receive the servicing records for those loans to evaluate your claims. Additionally, your demand did not include any supporting documentation referenced in the loan level allegation. Capital One requests that this information be provided as well. Moreover, you have not provided sufficient information to demonstrate that any of the alleged breaches materially and adversely affected the interests of the Insurer.

In addition, based upon Capital One's preliminary analysis of the limited information available, many of the alleged breaches of representations and warranties appear to be unfounded. Our review reveals loans that were properly underwritten. The following are but a few examples.

### Loan # 575014154

The subject loan is an owner occupied refinance. The basis for the demand was that the borrower was short funds to close.

The loan file reveals, however, that the borrower's savings account ending with 0035 had an available balance of $2,963.55 as of July 29, 2005. The ending balance on July 29, 2005, does not reflect the salary of $2,372.80 that was posted on the same

day. There is a mutual fund statement from Morgan Stanley that reflects a balance of $2,088.44 and there is another savings account ending with 8832 that reflects an ending balance of $95. The PITI of the subject loan is $1,404.56 and two months PITI for the reserves would be $2,809.12. The subject loan file contains verified assets in the amount of $4,520.45 which is sufficient to meet the reserve requirements. Further, the borrower has made 53 payments on the subject loan demonstrating his ability and willingness to repay the debt. In light of this information, we do not understand the basis for the contention that the amount of the borrower's savings as of the closing date somehow constitutes a breach that materially and adversely affected the interests of the Insurer.

### Loan # 575031406

The subject loan was a full document refinance of the borrower's primary residence. The basis for the demand was a claim of undisclosed liability.

As per Real Quest, the borrower purchased the allegedly undisclosed property at 2710 Rodgers Terrace on June 26, 2001. The borrower sold this property on November 15, 2004. The borrower's loan closed on December 2, 2005, which was more than a year after the borrower sold the allegedly undisclosed property. The credit report at origination shows that the mortgage of $91,000 taken with Northwest Federal on the Rodgers Terrace property was paid off in December 2004. Thus, we do not understand Ambac's contention that the non-disclosure of a non-existent liability somehow constitutes a breach that materially and adversely affected the interests of the Insurer.

### Loan # 556066983

The subject loan was originated as a refinance of a primary residence. The basis for the repurchase demand was that the DTI exceeds guidelines and that there were insufficient reserves. Specifically, it was alleged that:

> 1) The applicable underwriting guidelines permit a maximum DTI of 38% for a stated income loan, but the lender allegedly failed to use the correct monthly payment of $182.50 for hazard insurance, resulting in a DTI of 49.23% that the lender approved without granting an exception; and

> 2) The applicable underwriting guidelines require 6 months PITI reserves and the Borrower provided only 5 months eligible reserves. The borrower provided additional funds of $17,691, however, they were from his business account and there is no evidence of a letter from CPA stating that use of such funds will not affect day to day operations of the business.

We have reviewed this loan and determined that:

3

1) According to the note, hazard insurance, and title, the PITI is $3,460.37 (PI $2,697.36 + Hazard $182.50 + Tax $580.51). When adding the PITI of $3,460.37 plus all other debt of $2,750 in relation to the income of $22,000, the resulting DTI is 28%; and

2) According to the PITI calculated here, the 6 months reserves equal $20,762.22. The co-borrower's retirement account had $30,056.46 ($42,937.80 x 70%). Thus, the borrower had 8.7 months of reserves, more than the amount required. In light of this information, we do not understand the contention that there were breaches materially and adversely affecting the interests of the Insurer.

### Loan # 556067767

The subject loan was originated as a purchase of a primary residence. The basis for the repurchase demand was that the DTI allegedly exceeds guidelines. In particular, it was alleged that the applicable underwriting guidelines permit a maximum DTI of 36% for full documentation loans with an LTV between 80.01% and 95.00%, and that the lender approved the borrower with an actual DTI of 44.81% and a qualifying DTI of 45.38%, without evidence of an exception granted by the lender.

We reviewed the loan and according to the note, hazard insurance, and title included in the original file, the PITI is $1,834.73 (PI $1,544.06 + Hazard $75.61 + Tax $215.06). When adding the PITI of $1,834.73 plus all other debt of $451 in relation to the income of $9,730.96, the resulting DTI is 23%, which is well under program guidelines. In addition, the borrowers made 42 timely payments demonstrating their ability and willingness to repay their debts for over three years. The file presented very strong borrowers with 787 credit score, very minimal debt, clean mortgage history since 2004, verified assets in the amount of $107,158 and job stability. Furthermore, all 58 payments appear to have been made on time. Thus, we are aware of no basis for the repurchase demand.

As noted above, the foregoing is merely a sample of our findings relative to the numerous repurchase claims submitted by Ambac. We do not believe that the PSAs and, in particular the notice and repurchase provisions of the PSAs, were designed to be a mechanism to force the Seller to go to great expense to evaluate baseless claims of breaches of representations and warranties such as these.

Capital One reserves all of its rights and remedies and nothing contained in this letter shall constitute a waiver of any of Capital One's rights or remedies under the parties' agreements, at law or in equity. Moreover, this letter shall not be construed as a waiver of any defaults under the parties' agreements. This letter is also without prejudice to any position that Capital One may take subsequently on the subject matter.

Sincerely,

/s/ Stephen D. Otero

cc: U.S. Bank National Association, as Trustee (by U.S. Mail only)
    EP MN WS3D
    60 Livingston Avenue
    St. Paul, Minnesota 55107
    Attention: Structured Finance